UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DUANE SCHUIL, M.D., Ph. D,**
Individually,

    Plaintiff,

**v.**

**MCLAREN NORTHERN MICHIGAN**,
a Domestic Nonprofit Corporation,
**MCLAREN MEDICAL GROUP,**
a Domestic Nonprofit Corporation,
**MCLAREN HEATH CARE CORPORATION,**
a Domestic Nonprofit Corporation,

    Defendants.

CASE NO.

**JURY DEMAND**

---

**MICHAEL N. HANNA (P81462)**
**WARREN ASTBURY (P82416)**
**MORGAN & MORGAN, P.A.**
*Attorneys for Plaintiff*
2000 Town Center
Suite 1900
Southfield, MI 48075
Tel:  (313) 251-1399
mhanna@forthepeople.com

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Duane Schuil, M.D., Ph.D. ("Dr. Schuil"), by and through his undersigned counsel, hereby brings this action and complaint for damages and demand for jury trial against Defendants, McLaren Northern Michigan, McLaren Medical Group, and McLaren Health Care Corporation (collectively "McLaren") and in support thereof, alleges as follows:

## PARTIES

1. Plaintiff is a resident of the State of Arizona.

2. At all relevant times, Plaintiff was a resident of the state of Michigan.

3. Defendants conduct continuous and systematic business in Emmet County, Michigan.

4. The events described in this lawsuit primarily occurred in Emmet County, Michigan.

5. At all times material hereto, Plaintiff was an "employee" of McLaren Northern Michigan within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Michigan's Persons with Disability Civil Rights Act ("PDCRA"), MCL §37.1101 *et seq.*

6. At all times material hereto, Plaintiff was an "employee" of McLaren Medical Group within the meaning of the ADA and the PDCRA.

7. At all times material hereto, Plaintiff was an "employee" of McLaren Health Care Corporation within the meaning of the ADA and the PDCRA.

8. McLaren Northern Michigan meets all of the requirements for employer status under the ADA and the PDCRA.

9. McLaren Medical Group meets all of the requirements for employer status under the ADA and the PDCRA.

10. McLaren Health Care Corporation meets all of the requirements for employer status under the ADA and the PDCRA.

11. At all relevant times, Defendants maintained a workforce that employed at least 15 employees.

12. At all relevant times, Plaintiff was perceived to be an individual with a disability that substantially limited him in one or more major life activities within the meaning of the ADA and the PDCRA.

13. Defendants are a single and/or joint employer and/or integrated enterprise.

14. Plaintiff was perceived to be as a disabled individual with an alcohol dependency issue by McLaren from September 6, 2018 until the time of his termination.

## JURISDICTION

15. The jurisdiction of this court is invoked pursuant to the ADA. As such, the Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337.

16. The Court has supplemental jurisdiction over Plaintiff's PDCRA and breach of contract claims pursuant to 28 U.S.C. § 1367 as these claims are so related to Plaintiff's ADA claim that they form part of the same case or controversy.

17. Jurisdiction to grant injunctive relief and declaratory relief, as well as damages, is invoked pursuant to the Acts cited above as well as *Ex Parte Young*, 209 U.S. 123 (1908) pursuant to Plaintiff's request for prospective injunctive relief.

## VENUE

18. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within the Southern Division of the Western District of Michigan.

19. Defendants conduct substantial and not isolated business within the Southern Division of the Western District of Michigan.

20. Defendants have agents and employees in the Southern Division of the Western District of Michigan.

21. Defendants have a business located in the Southern Division of the Western District of Michigan.

## CONDITIONS PRECEDENT

22. Plaintiff has exhausted his administrative remedies by filing charges of discrimination with the Equal Employment Opportunity Commission on May 27, 2020.

23. On August 5, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue against Defendants with regard to this matter.

24. Plaintiff files this action within the applicable period of limitations.

25. All conditions precedent to this action have been satisfied and/or waived.

## STATEMENT OF FACTS

26. Dr. Schuil was employed by McLaren Medical Group.

27. McLaren Medical Group is a subsidiary of McLaren Health Care Corporation.

28. Dr. Schuil was employed by McLaren as an Interventional Cardiologist for over a decade and since approximately 2008.

29. Throughout his employment, Dr. Schuil received positive performance reviews.

30. Throughout his employment and until September 2018, Dr. Schuil was never subject to any disciplinary issues or investigations.

31. On September 3, 2018, Dr. Schuil injured his rib and experienced excruciating pain for days.

32. Dr. Schuil was scheduled to be the cardiology interventionalist on-call at McLaren on or about September 6, 2018.

33. On the evening of September 6, 2018, Dr. Schuil took patient related calls.

34. The last patient related call was at approximately 10:00 PM.

35. Thereafter, that patient was reported to be asleep for the night with no issues.

36. Later that evening, Dr. Schuil consumed his prescription sleep medication and prescription anxiety medication.

37. Dr. Schuil received a call on September 7, 2018 at approximately 3:00 AM from Physician Assistant, Duane Nolff.

38. Mr. Nolff accused Dr. Schuil of "sounding incoherent" during their 3:00 AM telephone conversation.

39. Dr. Dalton Miranda and Mr. Nolff reported to Dr. Schuil's home to verify that he was alright in the middle of the night.

40. Dr. Miranda advised Dr. Schuil to go to McLaren's Emergency Department.

41. A few hours later, at approximately 6:00 AM, Dr. Schuil reported to McLaren's Emergency Department, where it was confirmed that he had a broken rib, and was "awake and alert."

42. Notably, Dr. Schuil was never given a breathalyzer to confirm whether or not he was actually impaired when he reported to McLaren's Emergency Department on September 7, 2018.

43. Nonetheless, and as a result of this single isolated incident, McLaren regarded Dr. Schuil as a disabled individual with an alcohol dependency issue.

44. McLaren placed Dr. Schuil on a leave of absence, and investigated his perceived disability.

45. Specifically, on September 13, 2018, McLaren sent Dr. Schuil a letter, which states in relevant part:

> "You and I discussed on Tuesday, September 11, 2018, that you have become impaired through dependence upon alcohol…You know you cannot be allowed to

treat patients at McLaren Northern Michigan in that condition… **Your successful completion of the Michigan Health Professional Recovery Program is the only manner by which you will retain your employment**. We will not accept your enrollment in any other program. Further, if you do not enroll in the Program within the seven-day time frame, your contract will be terminated. Your contract will equally be terminated, if you enroll in the program and fail to maintain compliance with its requirements".

(emphasis added).

46. Dr. Schuil timely enrolled in the Michigan Health Professional Recovery Program ("HPRP") program.

47. Dr. Schuil was evaluated by the HPRP on September 24, 2018 and again on October 5, 2018.

48. Prior to McLaren perceiving Dr. Schuil to be an individual with a disability, McLaren had not mentioned any issues regarding Dr. Schuil's practice.

49. In October, 2018, the HPRP issued a Determination Letter, which states: "The Health Professional Recovery Program (HPRP) has received your evaluation and reviewed your case. Based on a lack of qualifying diagnoses, the HPRP does not feel you meet the requisite criteria for monitoring at this time. As such, we have closed your file ineligible and will be taking no further action."

50. Nonetheless, McLaren's investigation continued on for months **after** the HPRP determined that Dr. Schuil did not have a qualified diagnosis.

51. Moreover, by November 16, 2018, Dr. Schuil was cleared to work by his healthcare provider, and McLaren had notice of same.

52. Despite the HPRP determination and clearance from Dr. Schuil's healthcare provider, McLaren did not allow Dr. Schuil to return to work.

53. McLaren did not allow Dr. Schuil to return at that time because it continued to

6

perceive Dr. Schuil as disabled.

54. Despite the HPRP determination and clearance, McLaren required Dr. Schuil to undergo several medical evaluations, attend Alcohol Anonymous meetings, submit to random drug testing, and participate in ongoing psychiatric therapy.

55. In fact, on January 8, 2019, McLaren sent a letter stating, "We are aware that the Health Professional Recovery Program (HPRP) did not agree with a substance use disorder diagnosis. We have no explanation for the discrepancy".

56. McLaren forced Dr. Schuil to pay for the evaluations himself.

57. McLaren did not reinstate Dr. Schuil's clinical privileges even after he received positive medical evaluations and submitted daily Breathalyzer tests for months, revealing a .000 blood alcohol content.

58. McLaren's inconsistent requirements and shifting explanations regarding Dr. Schuil's employment proves McLaren's intent to discriminate against and harass Dr. Schuil based on his perceived disability.

59. On March 14, 2019, after positive medical evaluations, McLaren advised Dr. Schuil that based on his efforts, it was considering returning him to active status in the hospital.

60. Later **in that same letter**, McLaren recommended that Dr. Schuil be suspended.

61. On October 15, 2018, McLaren required Dr. Schuil to participate in the HPRP.

62. However, on January 8, 2019, McLaren stated, "It is not a requirement that you have treatment through HPRP".

63. McLaren's inconsistent requirements placed on Dr. Schuil furthered the hostile work environment that he was made to endure and provide proof of McLaren's discriminatory animus.

64. On April 10, 2019 and again on April 14, 2019, Dr. Schuil's medical evaluations stated that Dr. Schuil does not have a disability and was fit to return to work without further limitations.

65. Despite this, McLaren did not return Dr. Schuil to active status at that time and continued to regard him as a disabled employee.

66. On April 24, 2019, as a result of this ongoing harassment, Dr. Schuil contacted the Equal Employment Opportunity Commission ("EEOC") regarding a disability discrimination charge.

67. On May 13, 2019, Dr. Schuil advised McLaren that he had contacted the EEOC.

68. On May 16, 2019, McLaren advised Dr. Schuil that he was cleared to return to active staff on May 21, 2019.

69. On May 21, 2019, Dr. Schuil filed a complaint and charge of discrimination with the EEOC concerning the discrimination and harassment McLaren made him endure because it regarded him as a disabled employee.

70. On June 5, 2019, McLaren received this charge of discrimination from the EEOC.

71. On July 15, 2019, the EEOC requested that McLaren provide a position statement and additional information to the EEOC.

72. On August 16, 2019, McLaren placed Dr. Schuil on a "precautionary suspension" to investigate other purported issues in his practice that were not raised prior to the execution of the EEOC Charge.

73. McLaren placed Dr. Schuil on a "precautionary suspension" in retaliation for Dr. Schuil submitting a charge with the EEOC.

74. On August 20, 2019, McLaren again stripped Dr. Schuil's privileges and denied him access to his patients and performing procedures at the hospital.

75. McLaren stripped Dr. Schuil's privileges and denied him access to his patients and performing procedures at the hospital in retaliation for the EEOC Charge he filed.

76. As a result, Dr. Schuil requested that a peer review process take place regarding this vague notice of precautionary suspension.

77. On August 22, 2019, McLaren reinstated Dr. Schuil's clinical privileges while holding that no actionable findings existed.

78. On September 17, 2019, McLaren submitted its position statement to the EEOC, in response to Dr. Schuil's EEOC Charge of Discrimination.

79. *Two days later*, and on September 19, 2019, Dr. Schuil was removed from being on call without any standard peer review process.

80. Again, McLaren retaliated against Dr. Schuil by conducting an investigation concerning his standard of care.

81. The investigation was baseless and unwarranted by McLaren's policies.

82. Dr. Schuil followed McLaren protocol and the patient achieved a positive result.

83. On October 1, 2019, McLaren received the EEOC's Dismissal and Notice of Rights letter, which indicates that the EEOC was unable to conclude that the information obtained establishes violations of the statutes.

84. McLaren had access to the EEOC's Dismissal and Notice of Rights letter on October 1, 2019 through, *inter alia*, the EEOC portal.

85. McLaren received notice concerning the EEOC's decision to dismiss Dr. Schuil's initial EEOC charge on or before October 1, 2019.

86. Later that day, McLaren terminated Dr. Schuil's employment without just cause.

87. McLaren terminated Dr. Schuil's employment because he participated in the EEOC process and/or opposed disability discrimination.

88. Dr. Schuil's employment agreement was set to expire on June 30, 2020.

89. McLaren's termination was not related to the September 19, 2019 investigation.

90. McLaren Medical Group's termination of Dr. Schuil's employment was not related to the September 19, 2019 investigation.

91. McLaren's termination was not related to any purported standard of care violations.

92. McLaren Medical Group's termination was not related to any purported standard of care violations.

93. The standard of care investigation was not complete by October 1, 2019.

94. The standard of care investigation was not purportedly completed in November 2019.

95. McLaren asserts that Dr. Schuil's termination was not related to any investigations and/or investigative findings.

96. McLaren Medical Group asserts that Dr. Schuil's termination was not related to any investigations and/or investigative findings.

97. McLaren asserts that Dr. Schuil's sole cause of termination from employment is due to his alleged "refus[al] to respond to an urgent request to see a patient in the Hospital."

98. McLaren Medical Group asserts that Dr. Schuil's sole cause of termination from employment is due to his alleged "refus[al] to respond to an urgent request to see a patient in the Hospital."

99. Mr. Nolff is the individual who spoke on the phone with Dr. Schuil concerning the patient at issue concerning the purported "refusal to respond to an urgent request to see a patient in the Hospital."

100. Mr. Nolff is the only individual who contemporaneously spoke with Dr. Schuil concerning the patient at issue concerning the purported "refusal to respond to an urgent request to see a patient in the Hospital."

101. Mr. Nolff **did not** ask Dr. Schuil to come to the Emergency Department in person.

102. Dr. Schuil responded to all duty phone calls, including the on duty phone placed by Mr. Nolff concerning the patient referenced in paragraph No. 99.

103. McLaren further harmed Dr. Schuil's career even after his termination.

104. On November 25, 2019, McLaren advised Dr. Schuil that he would be subject to a proctoring requirement.

105. This post-termination correspondence was McLaren's effort to further stain Dr. Schuil's future medical career with potential employers and highlight "performance issues" to strain his future opportunities.

106. McLaren's allegations and investigations against Dr. Schuil regarding his perceived disability did not include a peer review process as required by McLaren's Bylaws.

107. Dr. Schuil never received the opportunity to present himself in front of an investigating body.

### COUNT I - AGAINST ALL DEFENDANTS
### DISCRIMINATION IN VIOLATION OF THE ADA

108. Plaintiff realleges and incorporates paragraphs 1-107 herein.

109. Plaintiff was perceived to be qualified individual with a disability under the

11

ADA, 42 U.S.C. § 12101 *et seq*.

110. At all times, Plaintiff was qualified for the position(s) that he either held or desired to hold with Defendants.

111. Plaintiff could perform the essential functions for the positions he either held or desired to hold with Defendants, either with or without a reasonable accommodation.

112. During the time Plaintiff was employed by Defendants, Plaintiff was subjected to disparate treatment and/or discrimination on the basis of his perceived disability.

113. Under the ADA, the Defendant was legally obligated to refrain from discriminating against Plaintiff because of his perceived disability.

114. Notwithstanding this obligation under the ADA and in willful violation thereof, Defendants discriminated against Plaintiff because it perceived Plaintiff as disabled.

115. Defendants violated the ADA through the adverse employment actions outlined above.

116. Defendants' discriminatory actions were willful, deliberate, and intentional.

117. The injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

118. As a direct and proximate result of the Defendants' violations of the ADA, Plaintiff suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

119. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

120. As a direct, natural, proximate and foreseeable result of the actions of Defendants, Plaintiff has suffered injuries for which he is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

121. The conduct of Defendants was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff, as to entitle him an award of punitive damages against Defendants, to deter it, and others, from such conduct in the future.

122. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ADA.

123. Plaintiff has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT II - AGAINST ALL DEFENDANTS**
**DISCRIMINATION IN VIOLATION OF THE PDCRA**

124. Plaintiff realleges and incorporates paragraphs 1-107 herein.

125. Plaintiff was a qualified individual who was regarded as having a disability.

126. Plaintiff was qualified for the position(s) he either held or desired to hold with Defendants.

127. During the time Plaintiff was employed by Defendants, Plaintiff was subjected to disparate treatment and/or discrimination on the basis of his perceived disability.

128. Defendants subjected Plaintiff to adverse employment actions because of his perceived disability.

129. Under the PDCRA, Defendants were legally obligated to refrain from discriminating against Plaintiff because of his perceived disability.

130. Notwithstanding this obligation under the PDCRA and in willful violation

thereof, Defendants discriminated against Plaintiff because it perceived Plaintiff as disabled.

131. Defendants violated the PDCRA by committing the adverse employment actions outlined above.

132. Defendants' discriminatory actions were willful, deliberate, and intentional.

133. The injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

134. As a direct and proximate result of the Defendants' violation of the PDCRA, Plaintiff suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

135. As a direct and proximate result of Defendants' violation of the PDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

136. As a direct, natural, proximate and foreseeable result of the actions of Defendants, Plaintiff has suffered injuries for which he is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

137. The conduct of Defendants was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff.

138. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the PDCRA.

139. Plaintiff has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

## COUNT III - AGAINST ALL DEFENDANTS
## RETALIATION IN VIOLATION OF THE ADA

140. Plaintiff realleges and incorporates paragraphs 1-107 herein.

141. Plaintiff engaged in a protected activity, which includes his objection to the harassment/discrimination Defendants made him endure because of his perceived disability, participation in the EEOC proceedings, and opposition to perceived disability discrimination/harassment.

142. On several occasions, Defendants took adverse employment actions against Plaintiff because Plaintiff engaged in protected activity.

143. Defendants' retaliatory actions were willful, deliberate, and intentional.

144. The injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

145. Defendants' retaliation would not have occurred had Plaintiff not engaged in protected activity under the ADA.

146. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

147. As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

148. As a direct, natural, proximate and foreseeable result of the actions of Defendants, Plaintiff has suffered injuries for which he is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental

15

anguish, loss of enjoyment of life, and other non-pecuniary losses.

149. The conduct of Defendants was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

150. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ADA.

151. Plaintiff has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

### COUNT VI - AGAINST ALL DEFENDANTS
### RETALIATION IN VIOLATION OF THE PDCRA

152. Plaintiff realleges and incorporates paragraphs 1-107 herein.

153. Plaintiff engaged in a protected activity, which includes his objection to the harassment/discrimination Defendants made him endure because of his perceived disability, participation in the EEOC proceedings, and opposition to perceived disability discrimination/harassment.

154. On several occasions, Defendants took several adverse employment actions against Plaintiff because Plaintiff engaged in protected activity.

155. Defendants' retaliatory actions were willful, deliberate, and intentional.

156. The injuries to Plaintiff that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

157. Defendants' retaliation would not have occurred had Plaintiff not engaged in protected activity under the PDCRA.

158. Defendant's retaliatory actions were willful, deliberate, and intentional.

159. The injuries to Plaintiff that arose as a consequence of Defendant's conduct were

foreseeable and intentionally caused by Defendant.

160. Defendant's retaliation would not have occurred had Plaintiff not disclosed his perceived disability and medical documentations, and/or engaged in protected activity under the PDCRA.

161. As a direct and proximate result of the Defendants' violation of the PDCRA, Plaintiff suffered economic damages including but not limited to, loss of wages, loss of benefits, back pay, front pay, and other expenses.

162. As a direct and proximate result of Defendants' violation of PDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

163. As a direct, natural, proximate and foreseeable result of the actions of Defendants, Plaintiff has suffered injuries for which he is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

164. The conduct of Defendants was so willful and wanton, and performed with malice or reckless indifference to the statutory rights of Plaintiff.

165. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the PDCRA.

166. Plaintiff, having been retaliated against by Defendants, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT V – AGAINST ALL DEFENDANTS**
**BREACH OF CONTRACT**

167. Plaintiff realleges and incorporates paragraphs 1-107 herein.

17

168. Dr. Schuil and McLaren entered into a valid employment contract on August 1, 2017.

169. Section 5.02 of Dr. Schuil's employment contract states: "The term of this Agreement shall expire on June 30, 2020."

170. McLaren asserts that Dr. Schuil was terminated from employment because he "refused to respond to an urgent request to see a patient in the Hospital."

171. McLaren Medical Group asserts that Dr. Schuil was terminated from employment because he "refused to respond to an urgent request to see a patient in the Hospital."

172. McLaren asserts that Dr. Schuil was terminated for cause.

173. Plaintiff's termination is a result of an alleged violation of McLaren Northern Michigan's General Medical Staff Rules and Regulations, Rule 2.2.2.

174. Mr. Nolff is the individual who spoke on the phone with Dr. Schuil concerning the patient at issue concerning the purported "refusal to respond to an urgent request to see a patient in the Hospital."

175. Mr. Nolff is the only individual who contemporaneously spoke with Dr. Schuil concerning the patient at issue concerning the purported "refusal to respond to an urgent request to see a patient in the Hospital."

176. Mr. Nolff **did not** ask Dr. Schuil to come to the Emergency Department in person.

177. Dr. Schuil did not breach any material terms of his employment contract.

178. Dr. Schuil did not violate McLaren Northern Michigan's General Medical Staff Rules and Regulations.

179. As such, McLaren materially breached its employment contract when it terminated Dr. Schuil in October 2019.

180. As a direct result of this breach of contract, Dr. Schuil has suffered monetary damages in the form of lost salary and benefits.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, cost of suit, attorneys' fees, and all such other relief as the court deems just and proper which include:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the ADA and the PDCRA;

b. Award Plaintiff all lost wages, past and future, and other monetary damages to which he is entitled to including interest under the ADA and the PDCRA;

c. Award Plaintiff his lost wages, benefits and all other forms of compensation he lost as a result of Defendants' breach of contract, all other damages available to the Plaintiff pursuant to his employment contract(s), and special damages deemed appropriate which includes, but may not be limited to, front-pay damages;

d. Award Plaintiff compensatory damages under the ADA and the PDCRA;

e. Award Plaintiff punitive damages under the ADA;

f. Award Plaintiff exemplary damages under the PDCRA;

g. Award Plaintiff reasonable attorney's fees, costs, and interest;

h. Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendant to cease their discriminatory conduct and practices; full reinstatement to his employment and position with Defendant under the ADA and the

PDCRA; and

      i.      Award all other relief as this Court deems just and proper and any other relief afforded under the ADA, the PDCRA and for breach of contract.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated this 8th day of September, 2021.

    By: /s/ *Michael N. Hanna*
    **MORGAN & MORGAN, P.A.**
    **MICHAEL N. HANNA**
    Michigan Bar No.: P81462
    Florida Bar No.: 85035
    **WARREN ASTBURY**
    Michigan Bar No.: P82416
    Illinois Bar No.: 6298999
    Florida Bar No.: 78056
    California Bar No.: 311962
    2000 Town Center, Suite 1900
    Southfield, MI 48075
    Tel: (313) 251-1399
    mhanna@forthepeople.com
    wastbury@forthepeople.com

    *Attorneys for Plaintiff*